## Stupp v. Gross et al.

Nov. 30, 1945.

[redacted]

Thos. F. Young for appellant.

W. L. Hammond and J. H. Taylor for appellee.

Opinion of the Court by Judge Latimer—Reversing.

The chief and most serious contention herein is over the custody of a child.

The appellant and appellee were married in Harlan County, Kentucky, on June 24, 1929. For a time succeeding their marriage they resided with the parents of the appellee near Kettle Island in Bell County, after which they moved to Lynch in Harlan County, where they lived until their separation on May 18, 1942. A son, Rodney Lee Gross, was born to them on August 23, 1941. At the time of their separation, the mother, with the son, moved to her parents in Corbin, Kentucky, and the husband returned to his parents in Bell County. From the day of separation until the latter part of July or first of August, 1942, the child was with the mother, except for a period of about one month. Sometime within that period the mother left the child with her parents and went to Louisville to obtain work, which she asserts was for the purpose of supporting herself and child, her husband having made no provisions for either her or the child. On August 6, 1942, appellee filed suit for divorce alleging as grounds therefor cruel and inhuman treatment, and, in addition thereto, lewd and lascivious conduct. Summons was issued thereon and mailed to the Sheriff of Jefferson County, which was returned, "not found—unable to locate."

On August 24, appellee made affidavit for the appointment of a warning order attorney alleging that appellant was concealing herself in order to avoid service of summons. On the day of the appointment of the warning order attorney, the deposition of the plaintiff below was taken by agreement with the warning order attorney.

On the 3d day of September, 1942, the husband went to the home of his wife's mother where he informed her he was going to the Navy the following Sunday and that he would like to have the baby with him until he left. The father and mother of the wife delivered the child to the appellee's home. On the night that the child was left at the home of appellee's parents, the appellant came back to Corbin from Louisville where she met her husband, who had returned to her mother's home in Corbin. Together they went to Middlesboro, then to Pineville where they spent Thursday night as husband and wife in the Continental Hotel. They then went to the home of his father and mother where they stayed until Sunday. On Sunday morning she returned by bus to Corbin and he went to Middlesboro. In the afternoon they met again at Corbin and together went to Louisville. The appellant testifies that some time during their stay together he had informed her that he had filed suit for divorce but that she had no information of the charges he had made against her. Immediately after her return to Louisville she was placed in a hospital for an appendectomy, within which time she wrote him some letters declaring her love for him, which letters were afterwards placed in the hands of his attorney to be used as exhibits against her. Upon her recovery from the operation she returned to Corbin, and on October 17, she and her sister went to the home of J. G. Gross, the father of her husband, in order to see her baby. She spent the night with it and on the following day, which was Sunday, undertook to take the baby home with her but was forcibly prevented from so doing.

On the following day, which was Monday, October 19, J. G. Gross, the father of her husband, filed his petition in the Bell County Court seeking appointment as guardian of appellant's child. The county court, on the same day, without any notice whatsoever to the mother, entered an order appointing the father of appellee guardian of the child and awarded him its custody. J. G. Gross' petition to be appointed guardian does not appear in this record but the county court on the day the petition was filed, without giving the mother any notice or opportunity to be heard, entered a rather unusual order as follows:

"J. G. Gross, having filed his verified petition to have himself appointed as guardian of the infant child,

Rodney Lee Gross, who is the grandchild of said J. G. Gross and the Court having read and considered said petition and having been advised and having made a personal investigation of this case and being acquainted personally with the parties and knowing their standing and financial ability and all the facts, finds that the father of this child, Harold Gross is now in the armed forces of his country and in the Navy of the United States and that he left said child with the said J. G. Gross and his wife to take care of it during his absence in the navy; and that the court further finds that the mother of this child deserted it and left it while it was a wee and tiny infant and yet nursing and that the father of the child and its grandfather, the petitioner and his wife, have raised the child so far and done a fine job at it and are attached to it and able to and can raise it in decency and honor and credit; and Court is further of the opinion and adjudges that the child's mother is an unfit person to have the care or custody of said child and should not be permitted to raise it or keep it in her custody.

"The Court adjudges and directs that said J. G. Gross be and he is now hereby appointed as Guardian for said infant child, Rodney Lee Gross, age 13 months and being the child of Harold Gross, above named, and the said J. G. Gross being present qualified as such guardian and executed bond in the penal sum of $500.00 for the faithful performance of his duties as such guardian and he is awarded the care, custody and control of said child to the exclusion of its mother and all evil minded persons claiming to have any care or custody or control of it and he shall exercise said care and custody and control over said child according to law. Said bond is now approved by the court and this order is directed to be spread at large on the Order Book of this Court and is now ordered to be and is made a part of the record of the court herein and of Bell County. Said Gross executed bond with J. H. Taylor and W. L. Hammonds as sureties.

"Witness my hand as judge of the Bell County Court on the 19th day of Oct., 1942."

Appeal was made from that case. On the first day of the November term of the Bell Circuit Court, which was the 2d day of November, the divorce action was sub-

mitted and judgment granted and entered on that day. However, the court vacated the judgment entered the first day and permitted the appellant to file her answer and counterclaim in which she controverted the allegations of the petition and in her counterclaim for divorce charged her husband with cruel and inhuman treatment, asked for alimony and custody of her child. The appeal from the county court appointing J. G. Gross guardian and the divorce action were consolidated. Much proof was taken. At the January term 1943, Judge Forester entered judgment in the consolidated cases in which nothing was said about the appeal from the county court relative to the appointment of guardian. He granted the husband an absolute divorce. He reserved his decision on the care, custody and control of the infant child and further adjudged that pending the decision of the court, the paternal grandmother of the infant be given the care, custody and control of the child until further orders of the court and pending the decision of the court on that question.

About one year afterwards, the appellant having married a Mr. Stupp, Dayton, Ohio, entered a motion asking the court to award her the custody of the infant child. Judge Robert Friend, Special Judge, heard the case at the January term 1944, and upon his motion, directed that further proof be taken in open court, which was done. On the last day of the term, the court entered judgment in which he said:

"* * * the Court is of the opinion that the welfare of the child in question requires that no determination of final custody should be made by the court at this time.

"It is adjudged and ordered that, subject to the further orders of the court, the infant child, Rodney Lee Gross, remain in the technical custody of the plaintiff and actual care of his parents, subject to the further provisions below mentioned.

"1. The parties are enjoined from removing said child from the State of Kentucky, and

"2. Are enjoined from removing said child from Bell County, except that in case of his extreme illness or injury, he may be removed to other points in Kentucky for medical care, and except that the defendant

may for as much as one week in each month take the child to the home of her parents at Corbin, Ky., and upon the termination of such period return him to the Gross home. Next before any such week, the defendant shall by writing, telegraph, or 'phone, notify the parents of the plaintiff of her intention to make such visit and the beginning date thereof."

It is from these judgments this appeal was taken.

Taken in its entirety, we have before us a rather macaronic record marked with inconsistencies, contradictions, vagaries, and even a bit of stultiloquence. In the first place, there was no particular attention paid to the code provision as to the county in which a divorce action must be brought. Summons was issued to Jefferson County, and after sheriff's return of "not found," warning order attorney was appointed, and on that day agreement was entered into with him to take depositions. On the first day of the term of court, the case was submitted on the deposition of the plaintiff alone and judgment entered. After the affidavit for and the appointment of warning order attorney, and before the submission of the cause, the plaintiff had been with the defendant at her home in Corbin, had spent one night with her at Pineville; had spent two nights with her in the home of his father and mother, within which there was ample time and opportunity to get personal service on her. It is true the judgment so taken on the first day of court was vacated and defendant was permitted to file her answer and counterclaim, after which considerable evidence was taken by both parties.

Second, we have the appointment of the plaintiff's father as guardian without notice to the mother of the child, the appointment being made on the very day the petition was filed, burdening the order with statements entirely incongruous and inconsistent with the facts in this record. This, however, was appealed from the county court to circuit court and consolidated with the divorce action. Judgment was entered upon the consolidated actions, in which the appeal from the county court was not mentioned, absolute divorce was granted the husband, and final disposition of the custody of the child was withheld but temporarily given to the mother of the plaintiff pending final action. Another

hearing was had a year later in which about the same thing was done.

It will be noted in the petition of the plaintiff below, in addition to the allegation of cruel and inhuman treatment, there is an allegation of conduct indicating the defendant to be a woman of unchaste character and that "she is only away from him temporarily and for the purpose of forsaking her baby and the plaintiff and for lewd purposes." This record has been carefully read in its entirety and it is noticeably lacking of any proof indicating that the mother of this child is lewd or unchaste in any manner. In fact a Mrs. Creech, appellee's witness, testified as follows:

"3. What kind of a woman did you find the defendant to be? A. Just as sweet as she could be.

"4. Well, do you think she is a fit and proper person to have the nurture and care of her child? A. I certainly do."

The plaintiff says that she refused to go back to the home of his parents. The defendant admitted that but gave as her reason that it was because of the incompatibility existing between her and his parents, and because she objected to her husband working Saturday and Sunday nights in the store where liquor sales were being made, and further because she didn't want her boy brought up in an environment of liquor selling. A number of plaintiff's own witnesses admitted that there were reports of liquor selling in the grocery store owned and operated by the father of the plaintiff, where the father admittedly sold beer under license and liquor without state license although he had a federal license.

There is much in the record to show the high position and standing of the family of Harold Gross and we are in no way disposed to quarrel with that attempt. It might be added, however, that the record discloses the position of the parents of each of the litigants to be relatively equalized. While it has been repeatedly stated by this court that the welfare of the child is the paramount and essential consideration, certainly it does not follow that we should not give at least a semblance of regard for a mother who gave birth to that child and who from the record is a fit person to be entrusted with its care and custody.

There is no merit in the contention of the appellee that the appeal should be dismissed on the face of the record because the orders appealed from are not final and are only temporary orders. Courts cannot possibly anticipate future changes in either the conditions or habits of parents, consequently any award is subject to modification. To take the appellee's view in this would be the equivalent of permitting the circuit court, if it desired so to do, to enter a temporary order and thus forever bar an appeal. Evans v. Evans, 229 Ky. 21, 16 S. W. 2d 485, cited by appellee, is not in point in that there was no judgment awarding the Evans children to either father or mother or to any other person.

The husband was granted a divorce, and, consequently, appellant was not allowed alimony. In view of the record with the unproven charge of unchastity and lewd and lascivious conduct, the facts were sufficient to authorize a divorce to the appellant, carrying with it an allowance for alimony. See Hartkemeier v. Hartkemeier, 248 Ky. 803, 59 S. W. 2d 1014; Burns v. Burns, 256 Ky. 834, 77 S. W. 2d 418. However, in view of the fact of appellant's remarriage in November of the year the judgment of divorce was entered and the further fact that the appellee was in service, we shall allow the judgment to stand as respects the alimony, but we are not content, in the absence of the proof of any unfitness or moral delinquency, to leave this child with its grandparents and deprive it of the tender care and love of its mother, and at same time deprive the mother of the love and companionship of her baby because some other person in better financial situation desires it.

Therefore, the judgment of the court below is reversed with directions to grant to the mother, appellant herein, the care and custody of the infant, Rodney Lee Gross, with the further order that the appellee pay to her $50 per month for maintenance of the child, and appropriate directions for privilege of visitation at convenient times granted the appellee.