## West v. West.

May 14, 1943.

302

Willis Staton for appellant.

W. W. Barrett for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and appellee were married in Pike County on March 29, 1935. On October 1, 1938, the wife (appellant) filed in the Pike circuit court her petition against her husband, the appellee, asking a divorce from their bonds of matrimony, upon the grounds of cruel and inhuman treatment almost continuously since their marriage, consisting of cursing, abusing and striking her on occasions, and making false accusations against her chastity. In addition she alleged that he was vicious in temperament, indolent and a constant consumer of liquor, producing frequent drunkenness, followed by arrests and imprisonment. Furthermore, that he then was, and had theretofore been, under indictment for various felonies—all of which disabled him to continue in any employment, and caused him to move from place to place without any permanently located residence. Testimony was taken proving the grounds alleged in appellant's petition, followed by a submission of the case and a judgment sustaining appellant's petition and granting her an absolute divorce.

Prior to the filing of the petition two children were born, Connie Lee West, about two years old at that time, and Sherry Ann West, then between four and six months of age, which also was stated in the petition, and at that time she had possession of the older child (Connie Lee), whilst the younger one (Sherry Ann) was then in the custody of Mr. and Mrs. West—the parents of appellee—he then having no home of his own, nor the owner of any property save and except his own clothing and a few other articles of personal property, which has continued to be so, as far as this record shows, from thence forward.

In the body of her petition appellant alleged "that she is entitled tó the custody of said child (Sherry Ann) when he (her husband) makes provision for its support;" which is followed by an allegation that her husband was "An incompetent person to have the custody of said child." The prayer of the petition asked for a divorce "from the bonds of matrimony; and for the custody of their child, Connie Lee, and for such orders and decrees that may seem proper temporarily; that she should have judgment for each child's maintenance and for all other proper relief."

Following the divorce appellant continued in custody of the older child, Connie Lee, until its later death; whilst the younger child, Sherry Ann, remained in custody of appellee's parents for the larger part of the time; but appellant also had custody of it for a part of the time, which arrangement appears to have been acquiesced in by all interested parties. However, there is no contention made, nor any testimony introduced, to show that appellant ever agreed, either with her husband or his parents, that such an arrangement regarding the custody of Sherry Ann should be permanent and beyond her recall. On one occasion whilst Sherry Ann was with her mother—and while the latter was living with her step-father and her mother—the sister of appellee, with the consent of appellant, took the child back to its paternal grandparents with the promise that it would soon be returned, but which was not done. Appellant then visited her husband's parents and requested that the promise to return Sherry Ann to her should be fulfilled, but both they and appellee refused and, apparently for the first time, asserted permanent rights of custody of the child. Thereupon and on October 13, 1941, appellant filed her affidavit setting forth the facts we have related with reference to the assertion of the right of custody of the child, Sherry Ann, and asked for a rule against appellee to show cause why he should not be punished for contempt, and for such other orders as might be necessary to restore to her the possession of the infant child whose custody the court had adjudged to her in the divorce judgment.

A hearing of that motion was had on October 18, 1941, and the court adjudged that so much of the divorce judgment "as adjudged the plaintiff the custody of Sherry Ann West was and is void for the reason that

said relief went beyond the prayer of the petition and granted such relief when not prayed for in the petition at that time, and that no defense was made by the defendant at that time. Therefore, the rule granted herein is discharged, but without prejudice to any future litigation between the parties as to the care and custody of said child." After that ruling was made appellant filed an amended petition conforming to the court's ruling, in which she alleged the above facts and "that the defendant is an outlaw and is in the hands of the law frequently and dodging the law and is not a fit and proper person to have the custody of said child; that he is a habitual drunkard and a dangerous person even to the life of the said child if it is left in his custody." She furthermore alleged in that pleading that appellee had no home; that his parents were old, and that the child could not obtain the care and attention from them "that a mother could give to it," and that she should have its custody; but that she had permitted them to have it temporarily on condition "that they allowed her to see and have the child when she wanted it." She prayed therein that "she be now granted the custody of said child by a modified or enlarged judgment, and for all other proper relief, including her costs herein expended."

In his answer to that amended petition appellee denied "that conditions have materially changed since the filing of the original petition herein, and the judgment of the court; says that it is true the plaintiff has remarried, but denies that she is now financially able to care for the infant child, Sherry Ann West." Appellant had stated in her amended petition—in addition to the above —that she had married since obtaining her divorce to Sherley Honaker, and later in the case it was shown, without contradiction, that he was permanently employed and receiving a compensation of some $35 or $45 per week, and that he was sober, upright and moral, having acquired a home for himself and wife and in which they resided.

Appellee denied that he had no home for the child, but the proof showed to the contrary and that the only home in which he might perform his duties of custodian of the child was that of his parents, whom he alleged were qualified to rear it. He furthermore charged in his answer that appellant's present husband (Honaker) and herself were habitual drinkers of intoxicating liquor, and

made other charges all of which were denied and which the proof entirely failed to sustain. Two volumes of evidence were then taken on the issues thus raised by the amended petition and following pleadings. The cause was then submitted and the court adjudged that "no sufficient reason has been shown by the plaintiff to justify the court in disturbing the present status as to the custody of the child Sherry Ann West, and does not believe it to be to the best interest of the child to do so." The judgment then recites that the original petition did not seek the custody of the child and that appellant permitted it to remain with its father, who took it to the home of his parents and that they had since had custody of it. But no recitation was made by the court that the actual custody was alternate and that appellant had its custody a part of the time. The court also found the paternal grandparents were qualified to rear it, and that they entertained great affection for it, and that "it would be cruel to them as well as to the child to take it from their home at this time." The court further referred to the remarriage of appellant, but stated that a step-father was not usually as affectionate to step-children as its parents, but there was no finding that the present husband of appellee was in any respect disqualified or unable to care and provide for the child in all respects. The court then dismissed the amended petition and adjudged that "The defendant will be allowed to retain the custody of the child so long as he keeps it in the home of his parents, and until the further orders of the court." From that judgment appellant prosecutes this appeal.

To begin with, it is our conclusion that the court was in error in holding that so much of the divorce judgment as gave to the appellant the custody of Sherry Ann West was void, either because no such relief was asked in the divorce petition, or for any other reason. There was no other reason assigned for that holding resulting in a dismissal of the contempt rule procured by appellant, and the one that the court did assign was, as we conclude, wholly insufficient to sustain it. It will be remembered that the petition—though somewhat clumsily drafted—stated in its body that appellant was entitled to the custody of Sherry Ann "when he (appellee) makes provision for its support" and that he was "an incompetent person to have the custody of said child." She prayed, as we have seen, that she retain the custody of the elder child, Connie Lee, "and for such orders and decrees that

may seem proper'' and ''that she should have judgment for each child's maintenance and for all other proper relief''; but the body of the petition had most positively stated the incompetency of defendant to have custody of either child, and that defendant should have the custody of both of them.'' The more or less confused verbiage of the entire prayer does not obscure the evident purpose of appellant as disclosed in her petition to obtain (1) a divorce from appellee, and (2) to be adjudged the custody of her two infant children. Therefore, the court improperly and erroneously adjudged the insufficiency of the petition to entitle appellant to obtain an order for the custody of the child, Sherry Ann West.

That being true, the only question that could be adjudged on subsequent application would be a change of conditions following the entry of the divorce judgment. But, under the proof adduced, the only change made in the then actual condition was a more complete development of appellee's unfitness to have the custody of his infant child because of his clearly proven unfitness for that purpose. We will not attempt to enumerate the testimony in substantiation of that fact, but will content ourselves with the statement that the proof overwhelmingly sustains it. There is then left in the case (treating the application for the rule and the following amended petition as constituting an application for a modification of the judgment relating to the custody of the infant) only the question as to whether appellant was for any reason an unfit person to have its custody, since under an unbroken line of opinions of this court we have held that the mother would be preferred as its custodian over any such rights of the father—unless she was also unfit for the purpose—when the child is so extremely youthful as the one involved here, and the word ''unfit'' as used in that statement comprehends physical and mental health, strength and ability to earn necessary finances for the purpose (if not already possessed) and good moral character. Some of the later cases approving that statement are, Johnson v. Cook, 274 Ky. 841, 120 S. W. (2d) 675; Staggs v. Sparks, 286 Ky. 338, 150 S. W. (2d) 690; Altemeier v. Rachford, 291 Ky. 845, 165 S. W. (2d) 848; Davis v. Davis, 289 Ky. 618, 159 S. W. (2d) 999; Ruttencutter v. Ruttencutter, 293 Ky. 556, 169 S. W. (2d) 604, and manifold other cases referred to in those opinions. In all of them we have said, in substance (granting the requisite fitness as above described), what is stated

in the Davis opinion [289 Ky. 618, 159 S. W. (2d) 1001], that "consistent with the general rule, the courts recognize that the well-being of a young child requires that he be kept and controlled by his mother." Citing the case of Adams v. Adams, 1 Duv. 167. In all of our cited recent opinions and in all of those referred to in them, we recognized the applicability of section 2123 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, section 403.070 of KRS, by taking into consideration the welfare and interests of the child; but such opinions likewise uphold the right of an upright and moral parent to the custody of his or her child as superior to that of grandparents, although the latter might be qualified in every respect to care for, properly nurse and maintain it.

The judgment appealed from, as we have seen, did not hold that appellant was an unfit or disqualified person to have custody of her child, but the trial judge bottomed his judgment exclusively, as we interpret it, upon the ground that ties of affection had been created between the child and its grandparents which it would be cruel to sever. The child, of course is too young to have matured such enduring affection as could not be overcome, and—as said in our opinions—notwithstanding that the severance of such ties might greatly affect the grandparents, yet the parents who were qualified would experience greater disturbance by being denied the custody of their child, and as between the two contenders for its custody the right should be adjudged to the parent, unless the parent had entered into some legal obligation relinquishing his or her right to the grandparents, or others to whom it was made. There is no contention in the pleadings, nor is there any proof, that any such arrangement was ever made by appellant, with either her husband or his parents. A detailed rehearsal of the testimony would most conclusively establish the material facts, as herein stated, but since such a course is not necessary to a decision of the case, and since it would be humiliating to those concerned, we have refrained from making any such recitation.

Wherefore, the judgment is reversed, with directions to set it aside and to adjudge appellant entitled to the custody of her young daughter, Sherry Ann West, and for other proceedings not inconsistent with this opinion.