John W. COMBS, Appellant,

v.

Sue Quisenberry COMBS, Appellee.

Court of Appeals of Kentucky.

Oct. 15, 1971.

Hoyt W. Noble, Lexington, for appellant.

James B. Stewart, White, McCann & Stewart, Winchester, for appellee.

EDWARD P. HILL, Jr., Judge.

The appellant filed a complaint in which he charged the appellee with being cruel and inhuman to him. He sought an absolute divorce and the custody of the only child of the parties, John Allan Combs.

The appellee filed counterclaim returning the accusation and demanding an absolute divorce, restoration of property, alimony, custody of the child, child-support money, and the recovery of her costs including a reasonable attorney fee.

By the judgment appealed from, the chancellor concluded that the appellee had the better of the argument and granted her absolute divorce, custody of the child, and $30 per week for its benefit. It also awarded the appellee the home of the parties at 3541 Willowood Road, Lexington, Kentucky, and directed that each party pay one-half of the indebtedness incurred on this property, which amounted to $11,000 ($5,500 each). The appellee was given judgment of $8,694.59, which represented the net proceeds from the sale of property the appellee's mother gave to the parties after their marriage. Appellee was given one of the defendant's automobiles, household furniture and fixtures, and her cost including attorney fee of $500.

The parties were married in 1967, at which time neither of them had any substantial estate. After the marriage, appellee's mother gave the parties a home on McDowell Road in Fayette County with the stipulation that appellee pay to her sister, Ann Hancock, $10,000 to equalize gifts made by the appellee's mother. The appellant contributed $1,000 of this amount, and the balance of $9,000 was borrowed from the Bank of Commerce of Lexington. Appellant contends on this appeal that he also contributed $1,500 toward the improvement

of the home on McDowell Road. The appellant contends that the judgment does not comport with the rules announced in Colley v. Colley, Ky., 460 S.W.2d 821.

There can be little question that the judgment restoring to the appellee $8,694.59 is fair, equitable, and legal. The award of the home to the wife in lieu of alimony is frequently made where heavy debts or mortgages are involved, and we have approved this procedure.

At first blush we can say that the attorney fee is not unreasonable. By KRS 453.120, the husband is obliged to pay all the cost, including a reasonable attorney fee for the wife's attorney, unless it appears in the evidence that the wife is at fault and has ample estate of her own to pay for her own attorney. The judgment does not find the wife at fault or that she has ample estate of her own with which to pay the cost. We conclude that the chancellor was correct in finding the appellee not at fault, in adjudging the cost against the appellant, and in fixing the amount of the attorney's fee. Smith v. Smith, 297 Ky. 395, 180 S.W.2d 275, and Hartkemeier v. Hartkemeier, 248 Ky. 803, 59 S.W.2d 1014.

The net result of the judgment is to restore to the appellee a substantial part of the gift to her from her mother and to give her the appellant's interest in the home. Appellant's equity in this home could not be very much for the simple reason that at the time of the purchase of the home the parties assumed a mortgage of $8,500 and borrowed $11,000 from the Bank of Commerce with which to pay the balance. That part of the judgment requiring appellant to pay his one-half of this $11,000 to the bank really amounts to a judgment to pay future alimony because he can pay it in the future according to the demands of the bank.

In short, we can find no injustice in any part of the judgment and therefore no reason to disturb it under the rules announced in Colley v. Colley, supra. It is appropriate here to repeat what was said in Burke v. Burke, Ky., 416 S.W.2d 724, at page 726:

"In reviewing the analysis and disposition of complicated or numerous accounts it is not a practical function of this court to undertake a de novo and detailed analysis of its own. We can look only to the extent necessary for a determination of whether manifest injustice has occurred. If the over-all result does not seem clearly erroneous, we are not disposed to pick it apart and adjust the particular pieces that may be. Were we to do so in this instance, the final result would not be far different from what the chancellor decided. We hold that his findings were not clearly erroneous."

The judgment is affirmed.

All concur.